José Esteban García, conocido también por José Esteban Fantauzzi, demandante y apelante, v. Jacinta García Torrondell y José Torres, conocido por El Gacho, demandados y apelados.

Núm. 9960.—*Sometido:* Noviembre 7, 1949. *Resuelto:* Marzo 7, 1950.

*Benjamín Ortiz y Álvaro Ortiz,* abogados del apelante; *Celestino Iriarte, F. Fernández Cuyar* y *H. González Blanes,* abogados de los apelados.

EL JUEZ ASOCIADO SEÑOR TODD, JR., emitió la opinión del tribunal.

Las conclusiones de hecho a que llegó la corte inferior en este caso constituyen, a nuestro juicio, una apreciación correcta de la prueba presentada por las partes, y dicen así:

"1. No existe controversia entre las partes sobre los siguientes hechos probados:

"A.—El 26 de junio de 1930 el demandante traspasó a su señora madre, la demandada Jacinta García Torrondell, una finca rústica del demandante de cinco cuerdas con dos edificaciones en el barrio Montellanos de Cayey, que se describe en el apartado 8 de la demanda, y un crédito hipotecario de $3,000 adeudado al demandante por Juan Dumont López, llevándose a efecto tal traspaso por la escritura número 51 otorgada en dicha fecha ante el notario Francisco Navarro Ortiz en Cayey, en la que aparece dicho traspaso como una compraventa efectuada por $6,700, valor recibido; que el 23 de junio de 1930 Antonio Alicea Vega y su esposa María Luisa Colón constituyeron una hipoteca, para garantizar un préstamo de $1,200, a favor de dicha demandada por la escritura número 50 otorgada ante el mismo notario en Cayey y el 20 de junio de 1930 Fidel Santiago Mendoza constituyó una hipoteca para garantizar un préstamo de $1,800 a favor de dicha demandada por la escritura número 47 otorgada ante el mismo notario en Cayey.

"B.—Los traspasos, ventas y contratos envueltos en las expresadas transacciones fueron simulados y efectuados sin que mediara en ellos causa ni consideración alguna y los mismos fueron una maniobra del demandante, quien era el verdadero dueño de todos los bienes antes de dichas transacciones y continuaba siéndolo después de éstas, para protegerse del embargo de dichos bienes en reclamaciones que pudieran incoarse contra él con motivo de un accidente automovilístico en que se viera envuelto días antes.

"C.—La demandada y su esposo el codemandado José Torres entraron en posesión de dichos bienes tan pronto se efectuaron los

traspasos en cuestión y días después suscribieron un escrito privado, que entregaron al demandante y éste aceptó, por el que los demandados reconocieron que la simulación habida en los traspasos efectuados por el demandante a la demandada Jacinta García Torrondell se había efectuado como un acto de confianza personal del demandante e hicieron constar que no tenían dinero ni derecho alguno en los bienes envueltos en dichos traspasos y que conservarían los mismos a nombre del demandante hasta que éste solicitara su devolución en cuyo caso los demandados devolverían tales bienes inmediatamente otorgando las correspondientes escrituras sin exigir al demandante ningún dinero por tal devolución.'' (Aquí la corte copia el escrito privado.)

''. . . . . . . . .

''3. Los demandados han estado en posesión de dichos bienes desde que se inició tal posesión en 1930 hasta el presente del modo y en los alcances que más adelante se dirán.

''4.—La finca de cinco cuerdas, con edificaciones, en el barrio Montellanos de Cayey traspasada a la codemandada Jacinta García Torrondell, se describe. . .'' (Aquí la descripción.)

''Cuando los demandados tomaron posesión de la misma, existían en dicha finca dos edificaciones a saber, un ranchón destartalado a la orilla de la carretera y una casa de vivienda que las partes denominan 'la casa de arriba'. Los demandados, con el conocimiento y consentimiento expreso del demandante, hicieron, con dinero de su propio peculio, mejoras sustanciales en dichas dos edificaciones, convirtiendo el ranchón en una casa habitable, que vivió un tiempo el demandante, mejora en la cual invirtieron materiales y mano de obra por valor de $920, y adicionándole una habitación a dicha segunda edificación, que también vivió un tiempo el demandante con tal mejora, en lo cual invirtieron materiales y mano de obra por valor de $644.

''5. Los demandados, con el conocimiento y con el expreso consentimiento y aprobación del demandante y a la vista de éste, construyeron con dinero de su propio peculio tres nuevas edificaciones en dicha finca de cinco cuerdas de Montellano, a saber: un rancho para secar tabaco que construyeron en 1938 invirtiendo materiales y mano de obra a un costo de $2,300; una casa vivienda que construyeron en 1938 invirtiendo materiales y mano de obra a un costo de $2,500 y otra casa vivienda que construyeron en 1943 invirtiendo materiales y mano de obra a un costo de $2,221.

''6. Los demandados han conservado dicha finca de Montellano como buenos padres de familia, la han labrado continuamente y efec-

tuado siembras de distinta naturaleza, entre otras la de árboles frutales, y usufrutuado los frutos de tales siembras y las rentas de las arriba dichas edificaciones, frutos y rentas cuya cuantía es imposible precisar por razón de que la prueba al efecto presentada por las partes es sumamente deficiente.

"7. El crédito hipotecario de $3,000 adeudado por Juan Dumont López fué reclamado judicialmente ejecutándose la hipoteca y rematándose el inmueble correspondiente. Por falta de postores en la subasta, el inmueble fué adjudicado a la codemandada Jacinta García Torrondell por la suma de $2,800 de la cual los demandados satisficieron al demandante, $1,225 la codemandada y $500 el codemandado, o sea, un total de $1,725, reteniendo los demandados $1,075. No hay prueba sobre fechas.

"8. El crédito hipotecario de $1,800 adeudado por Fidel Santiago Mendoza fué reclamado judicialmente ejecutándose la hipoteca y rematándose el inmueble correspondiente, adjudicándose el mismo a la codemandada Jacinta García Torrondell, quien posteriormente lo vendió por precio de $2,800 luego de invertir los demandados $430 en mejoras al inmueble, consistentes en una cerca y drones de agua. Satisficieron los demandados al demandante $800 y retuvieron $1,570. No hay prueba sobre fechas.

"9. El crédito hipotecario de $1,200 adeudado por Antonio Alicea Vega fué reclamado judicialmente ejecutándose la hipoteca y adjudicándose el inmueble correspondiente a la codemandada Jacinta García Torrondell y ésta lo tiene inscrito a su nombre en el Registro de la Propiedad de Guayama . . .

"

"Al rematarse el inmueble los demandados pagaron al deudor hipotecario $350 por concepto de hogar seguro. Los demandados han usufructuado y continúan usufructuando las rentas de dicho inmueble a razón de $6 mensuales. No hay prueba de la fecha de la adjudicación del inmueble.

"10. Los demandados han satisfecho las contribuciones territoriales correspondientes de los bienes inmuebles arriba dichos, sin que pueda precisarse con exactitud la cuantía de las mismas.

"11. Los demandados han satisfecho de su propio peculio al demandante para beneficio de éste con su aprobación previa, entre otras, las siguientes sumas de dinero, ello desde que los demandados tomaron posesión de los bienes del demandante: $610 para gastos de la esposa del demandante en 1935; $1,225 para honorarios de abogado con motivo de un pleito contra el demandante proveniente de

un accidente automovilístico en Santa Isabel en 1936; $230 para gastos por mor de un accidente automovilístico del demandante ocurrido en Guajataca en 1937; $33 para gastos con motivo de un accidente automovilístico que tuviera el chófer del demandante en Las Marías en 1939; $200 para satisfacer daños ocasionados por otro accidente sufrido por el demandante en 1937; $57 para gastos ocasionados por otros dos accidentes automovilísticos del demandante y $42 para gastos en piezas de automóvil para el demandante, sumas que totalizan $2,397.

"12. La demanda del actor se radicó el 25 de mayo de 1945 y fué durante el inicio de dicho año de 1945 que por vez primera requirió el demandante a los demandados conjuntamente o a uno de ellos para que le devolvieran el título correspondiente de los bienes suyos así como la posesión de los mismos a lo cual se negaron los demandados alegando que lo harían cuando el demandante les pagara 'el sudor que nosotros hemos dejado aquí'."

Como consecuencia de estos hechos probados y después de exponer sus conclusiones de derecho, la corte dictó sentencia con los siguientes pronunciamientos:

Que el demandante es el dueño de los bienes inmuebles descritos en la demanda; que la escritura núm. 51 de 23 de junio de 1930 es nula y en su consecuencia ordenó la cancelación en el Registro de la Propiedad de la inscripción hecha a favor de Jacinta García Torrondell y la inscripción a favor del demandante; ordenó a los demandados restituir al demandante en la posesión de dichas fincas; que los demandados construyeron de buena fe en la finca de cinco cuerdas mejoras en las dos casas que existían y tres nuevas edificaciones cuyo costo de materiales y mano de obra fué de $8,605 y, por haber optado el demandante en hacer suyas dichas mejoras y edificaciones éste viene obligado a pagar previamente a los demandados dicha suma y éstos tienen derecho a retener y disfrutar de la posesión y usufructo de dichas edificaciones; que hasta que el demandante satisfaga dicha suma la finca de cinco cuerdas quedará afecta en dicha suma y el Registrador debe practicar la anotación correspondiente; condenó a los demandados a satisfacer al demandante las rentas de $6 mensuales

que han usufructuado de la otra finca desde el 1ro. de enero de 1945 hasta el momento en que se restituya al demandante en su posesión, con intereses al 6 por ciento anual y condenó a cada parte a satisfacer sus costas sin incluir honorarios de abogado.

No conforme el demandante apeló y en este recurso hace un señalamiento de diez errores, los cuales pueden resumirse en cuatro, a saber, que erró la corte inferior: (1) Al considerar a los apelados poseedores de buena fe, (2) al no ordenar a los apelados a pagar al apelante el justo valor de los bienes, (3) al no ordenar a los apelados a devolver al apelante lo obtenido al ejecutar los tres créditos hipotecarios, y (4) al apreciar la prueba. Dispondremos del último error en primer término.

Como hemos indicado antes, las conclusiones de hecho de la corte inferior son reflejo fiel de la prueba presentada que le mereció crédito. Hemos leído varias veces, detenidamente, la transcripción de la evidencia en este caso y estamos convencidos de que a ningún juzgador consciente de su misión podía merecerle crédito la declaración del demandante, único testigo en su propio beneficio, en el sentido de que poco después de traspasar sus bienes a nombre de su madre solicitó su devolución y que nunca se enteró de las mejoras y edificaciones que se hicieron en su finca hasta después de realizadas. Por su propia admisión se probó que el traspaso original se hizo para evitar tener bienes con qué responder de una reclamación de daños y perjuicios causados por su automóvil. Se demostró, además, que posteriormente sus automóviles en varios accidentes causaron daños que tuvieron que ser solventados por los demandados; se probó que él vivió con su esposa en dos de las casas que había en las fincas; que su esposa murió y la demandada sufragó todos los gastos del entierro; que al ocurrir esto la demandada se hizo cargo del hijo del demandante y lo ha criado, mantenido y educado durante más de trece años sin que el demandante en ningún momento le pa-

sara nada; se probó que el demandante recibió las distintas cantidades que especificó la corte y hasta que hubo ocasiones en que agredió a su madre cuando ésta no le daba lo que le pedía; que tuvo conocimiento y presenció cuando se hacían las mejoras y edificaciones realizadas por los demandados y nunca se opuso a que se hicieran. La controversia entre el demandante y los demandados surgió en 1945 al negarse su madre a devolverle la finca a menos que él le reembolsara el importe de dichas edificaciones. La demandada y su esposo nunca negaron que las fincas pertenecieran al demandante pero sí reclamaron de él el importe de lo que en ellas invirtieron. No habiendo errado la corte inferior, repetimos, al apreciar la prueba, pasamos a considerar los demás errores señalados.

██ Sostiene el apelante que los demandados no son poseedores de buena fe y que por tanto, la corte sentenciadora erró al resolver que tenían derecho a retener la posesión de las edificaciones hasta que el apelante les satisfaga el importe de los materiales y mano de obra y que no venían obligados a pagarle los frutos percibidos por ellos.

Es cierto que de acuerdo con el artículo 363 del Código Civil, ed. de 1930 ''Se reputa poseedor de buena fe al que ignora que en su título o modo de adquirir exista vicio que lo invalide'' siendo poseedor de mala fe el ''que se halla en el caso contrario'', y que de acuerdo con el artículo 293 del mismo cuerpo legal ''Es poseedor de buena fe el que posee como propietario por virtud de un título suficiente en sus términos y condiciones para transferir la propiedad y cuyos defectos son ignorados por el poseedor''. Empero, si bien la corte inferior llegó a la conclusión de que los demandados eran poseedores de buena fe, no obstante saber que en el contrato de compraventa no había mediado causa y que por tanto era nulo, también concluyó que era imposible precisar la cuantía de los frutos y rentas por razón de que la prueba

presentada era sumamente deficiente. En efecto, aceptando que los demandados, bajo los artículos 363 y 293, supra, fueran poseedores de mala fe por saber que su título era nulo, el estudio que hemos hecho de la transcripción de la evidencia nos convence de que no erró la corte inferior al concluir que no hubo prueba satisfactoria y convincente de los frutos y rentas.

■ Por otra parte, y en cuanto a las mejoras y edificaciones se refiere, tampoco erró al sostener que debe aplicarse el artículo 300 del Código Civil, ed. de 1930 que dispone que:

"Cuando haya habido mala fe, no sólo por parte del que edifica, siembra o planta en terreno ajeno, sino también por parte del dueño de éste, los derechos de uno y otro serán los mismos que tendrían si hubieren procedido ambos de buena fe.

"Se entiende haber mala fe por parte del dueño siempre que el hecho se hubiere ejecutado a su vista, ciencia o paciencia, sin oponerse."

Toda la prueba, incluyendo la declaración del demandante, aunque él trató de negarlo, demuestra que tuvo conocimiento de las mejoras y edificaciones que se hicieron a su presencia y que nunca se opuso a que se realizaran.

Comentando Manresa el artículo 364 del Código Civil de España que es igual al 300 del nuestro, dice:

"Por lo que a la razón del artículo se refiere, fácil es comprenderla. Como dicen las Partidas, quien se deja engañar a sabiendas no puede querellarse como hombre engañado. Realmente, *si los dos que se encuentran en lucha sobre la propiedad han provocado el conflicto por su voluntad, a ciencia y paciencia del dueño del suelo, ante cuya vista las obras se han ejecutado, y con conciencia, por parte del que edifica o planta, de que el terreno no es suyo,* no hay razón alguna que abone derecho preferente en favor de ninguno de los dos; deben, por tanto, tratarse como si los dos hubiesen obrado de buena fe: la mala fe del uno extingue y neutraliza, en justa reciprocidad, la del otro." (Bastardillas nuestras.) III Manresa, Comentarios al Código Civil Español, quinta edición, pág. 223.

■ En la súplica([1]) de su demanda solicita el demandante que se condene a los demandados "a devolver al demandante los bienes descritos en esta demanda, y si esto no fuera posible en cuanto a alguno de ellos, condenando a los demandados a pagar al demandante el justo valor de los mismos". Es decir, hizo uso de la opción que establece el artículo 297 del Código Civil, ed. de 1930, al efecto de que:

"El dueño del terreno en que se edificare, sembrare o plantare de buena fe, tendrá derecho a hacer suya la obra, siembra o plantación, previa la indemnización establecida en los artículos 382 y 383 de este código, o a obligar al que fabricó o plantó, a pagar el precio del terreno, y al que sembró, la renta correspondiente.".

El hecho de que en la súplica no especificara que la devolución de los bienes a él estaría condicionada a la previa indemnización correspondiente, no implica que no estuviera él obligado a realizar dicho pago especialmente cuando a renglón seguido solicitó, en la alternativa, que se condenara a los demandados a pagarle el justo valor de sus bienes. Es más, hemos resuelto interpretando el alcance del artículo 297, supra, que en la demanda debe alegarse que el demandante ha hecho el pago previamente al demandado o que consigna con ella una suma razonable para indemnizar al dueño de lo construído por el costo de los materiales y la mano de obra. *Figueroa* v. *Rodríguez,* 68 D.P.R. 266, 271 y casos en él citados; *Villamil* v. *Camacho,* 64 D.P.R. 821. No se planteó en este caso, sin embargo, cuestión alguna en cuanto a la suficiencia de la demanda y por el contrario los demandados en su contestación se allanaron a que se declarara con lugar en cuanto a la devolución al demandante de la propiedad que éste entregó en el 1930, pero solicitaron asimismo que en la sentencia se declarara que las mejoras y edificaciones pertenecen a los demandados. En su sentencia la corte reconoció tanto el derecho del demandante a las fincas de su propiedad

---

([1])Aun cuando la súplica no forma parte de la demanda, sirve para interpretarla. *Rivera* v. *Sucn. Lugo,* 42 D.P.R. 189; *Isern* v. *Benítez,* 57 D.P.R. 342.

y ordenó que se inscribieran a su nombre en el Registro de la Propiedad como también el derecho de los demandados a ser indemnizados en el valor de los materiales y mano de obra invertidos por ellos y mientras tanto, que tienen derecho a retener y disfrutar la posesión y usufructo de dichas edificaciones. Nos parece justa, razonable y en ley la determinación hecha por la corte salvaguardando los derechos de ambas partes.

En cuanto a la solicitud del apelante al discutir el tercer error, supra, de que debe restablecerse el estado de cosas anterior a las ejecuciones judiciales y que los tres créditos hipotecarios deben también restablecerse en su totalidad a su favor contra los deudores hipotecarios es improcedente. De acuerdo con la prueba la madre del apelante, de los tres bienes inmuebles que obtuvo al ejecutar los créditos hipotecarios, solamente tiene inscrito a su favor uno, habiéndole dado al apelante el producto de la venta de los otros dos. Y en cuanto al único que tiene inscrito, la corte en su sentencia ordenó que sea entregado al apelante.

*Por las razones expuestas, debe confirmarse la sentencia.*