WALDEMAR VÉLEZ TORO y OTROS, demandantes y recurridos, *v.* José R. Látimer, demandado y recurrente.

*Número:* RE-89-19     *Resuelto:* 12 de enero de 1990

*Tomás E. Vivoni,* abogado del recurrente; *Ardellie Ferrer,* abogada de los recurridos.

## SENTENCIA

Los demandantes son dueños de varios predios de terreno que colindan con la finca del demandado. En la finca del demandado hay varios árboles cerca de la colindancia cuyas ramas se extienden a las propiedades de los demandantes.

El 20 de julio de 1988 los demandantes iniciaron la presente acción de daños y perjuicios al amparo del Art. 277 del

110

Código de Enjuiciamiento Civil de Puerto Rico, 32 L.P.R.A. sec. 2761.(¹) Alegaron que los árboles constituían un estorbo público y una limitación a su derecho de propiedad. También adujeron que en múltiples ocasiones, por escrito y personalmente, le habían solicitado al demandado que eliminase los árboles y éste se había negado, alegando que él no fue el que los sembró.

Posteriormente, la parte demandante presentó varias fotografías y cartas para que el tribunal dictase sentencia por el expediente. La parte demandada se allanó a ello.

El 12 de diciembre de 1988 el tribunal de instancia dictó sentencia según los Arts. 527 y 528 del Código Civil, 31 L.P.R.A. secs. 1803 y 1804, que leen así:

*Sec. 1803. Arboles*

No se podrá plantar árboles cerca de una heredad ajena sino a la distancia autorizada por las ordenanzas o la costumbre del lugar, y en su defecto a la de dos metros de la línea divisoria de las heredades si la plantación se hace de árboles altos, y a la de 50 centímetros si la plantación es de arbustos o árboles bajos.

Todo propietario tiene derecho a pedir que se arranquen los árboles que en adelante se plantaren a menor distancia de su heredad.

*Sec. 1804. Ramas y raíces de árboles*

Si las ramas de algunos árboles se extendieren sobre una heredad, jardines o patios vecinos, tendrá el dueño de éstos

---

(¹) *"Sec. 2761. Perturbación, definición; acción para obtener su cese*

"Todo lo que fuere perjudicial a la salud, indecente u ofensivo a los sentidos, o que interrumpa el libre uso de la propiedad, de modo que impida el cómodo goce de la vida o de los bienes, constituye una perturbación que da lugar a una acción. Dicha acción podrá ser promovida por cualquier persona cuyos bienes hubieren sido perjudicados o cuyo bienestar personal resulte menoscabado por dicha perturbación; y la sentencia podrá ordenar que cese aquélla, así como decretar el resarcimiento de los perjuicios; lo aquí provisto no podrá aplicarse a las actividades relacionadas con el culto público practicado por las diferentes religiones; Disponiéndose, que nada de lo aquí dispuesto limitará los poderes de la Junta de Calidad Ambiental para promulgar los reglamentos a que está autorizada por ley." 32 L.P.R.A. sec. 2761.

derecho a reclamar que se corten en cuanto se extiendan sobre su propiedad, y si fueren las raíces de los árboles vecinos las que se extendiesen en el suelo de otro, el dueño del suelo en que se introduzcan podrá cortarlas por sí mismo dentro de su heredad.

Ordenó al demandado arrancar los árboles que se encontrasen a menos de cincuenta (50) centímetros de la colindancia de los predios de los demandantes, así como aquellos arbustos o árboles mayores de seis (6) pies de altura que se encontrasen sembrados a menos de dos (2) metros de distancia de dichas colindancias. Además, ordenó cortar las ramas o raíces de cualquier árbol sembrado en la propiedad del demandado que se extendiera sobre los predios de los demandantes, independientemente de la distancia a que se hallen sembrados.

No conforme, el demandado presentó recurso de revisión alegando que el tribunal de instancia cometió error al no desestimar la demanda (presentada bajo las alegaciones de perturbación o estorbo público) por insuficiencia de prueba, y al dictar sentencia aplicando un derecho que no fue rogado, alegado, probado y que trata de una materia distinta a la controversia entablada.

## I

El propósito de las alegaciones es bosquejar la controversia a grandes rasgos para notificar a la parte contraria, de esta forma, sobre las contenciones y reclamaciones en su contra. Así, la parte demandada queda debidamente apercibida y puede comparecer, si lo desea, a defenderse de lo que le reclaman. *Sierra v. Tribunal Superior*, 81 D.P.R. 554, 560 (1959); *Moa v. E.L.A.*, 100 D.P.R. 573, 586 (1972); J.A. Cuevas Segarra, *Práctica Procesal Puertorriqueña: Procedimiento Civil*, San Juan, Pubs. J.T.S., 1984, Vol. II, Cap. III, pág. 47. Reiteradamente hemos resuelto que aunque la súplica de la demanda no forma parte de ésta, sirve para

interpretarla. *Rivera v. Sucn. Lugo*, 42 D.P.R. 189 (1931); *Isern v. Benítez*, 57 D.P.R. 342, 352 (1940); *García v. García*, 70 D.P.R. 949, 957 esc. 1 (1950); *Sánchez v. De Choudens*, 76 D.P.R. 1, 11 esc. 2 (1954); *Rivera v. Otero de Jové*, 99 D.P.R. 189, 194 (1970).

En el caso de autos, los demandantes iniciaron su acción al amparo del Art. 277 del Código de Enjuiciamiento Civil, *supra*. En ningún momento hicieron las alegaciones necesarias para enmarcar su acción dentro del Art. 527 del Código Civil, *supra*. No alegaron que los árboles sembrados en el patio del demandado estuviesen a una distancia no autorizada por las ordenanzas o la costumbre del lugar, o a menos de dos (2) metros de distancia de la línea divisoria de las heredades, por lo cual deberían ser arrancados. Se limitaron a señalar que los árboles en cuestión debían ser arrancados debido a que constituían un estorbo público, ya que las hojas y ramas de los mismos, así como sus frutos, caían sobre sus patios, trayendo con ello sabandijas.

Interpretando las alegaciones de la demanda junto con la súplica, concluimos que el demandado no fue debidamente notificado de una reclamación en su contra al amparo del Art. 527 del Código Civil, *supra*. Él limitó su contestación a lo que se le reclamaba: la eliminación de un estorbo público. Bajo estas circunstancias, si los demandantes no probaban la existencia de un estorbo público, a tenor con lo dispuesto en el Art. 277 del Código de Enjuiciamiento Civil, *supra*, procedía la desestimación de la demanda salvo, claro está, que pudiesen demostrar que ésta quedó enmendada por la prueba. Regla 13.2 de Procedimiento Civil, 32 L.P.R.A. Ap. III.

## II

La única prueba que tuvo ante sí el foro de instancia fue: (a) cuatro (4) fotografías a color que muestran la cerca que divide las propiedades de los demandantes de la del demandado y unos árboles y arbustos en la propiedad del deman-

dado, algunas de cuyas ramas penetran al terreno colindante de los demandantes; (b) tres (3) cartas dirigidas al demandado relacionadas con el problema de los árboles, y (c) una (1) fotocopia de los Arts. 527 y 528 del Código Civil, *supra*. Esta prueba no fue objetada por el demandado. La Regla 13.2 de Procedimiento Civil, *supra*, autoriza las enmiendas a las alegaciones para conformarlas con la prueba. Analicemos la prueba admitida y no objetada en el caso de autos.

*Las cuatro (4) fotografías.* A lo sumo, lo que éstas prueban es la existencia de árboles y arbustos en la propiedad del demandado, cerca de la colindancia de dicha propiedad con la de los demandantes, y que algunas de las ramas de éstos penetran la propiedad de los demandantes.

*Las tres (3) cartas.* Éstas simplemente demuestran que los demandantes le hicieron varias reclamaciones al demandado relacionadas con las molestias que los árboles y arbustos en cuestión les ocasionaban.

*La fotocopia de los artículos del Código Civil.* No se considera prueba. Surge pues, con patente claridad, que los demandantes no presentaron prueba sobre los elementos básicos del Art. 527 del Código Civil, *supra*, que los hicieran acreedores al derecho a solicitar que se arrancasen los árboles y arbustos sembrados en el predio del demandado. La prueba presentada, por lo tanto, no tuvo el efecto de enmendar las alegaciones de la demanda para aducir una reclamación al amparo del Art. 527 del Código Civil, *supra*. La prueba no demostró que los árboles en la propiedad del demandado estuvieran a una distancia menor que la autorizada por las ordenanzas o la costumbre del lugar, o en su defecto, a menos de dos (2) metros de la colindancia, ni que los arbustos estuviesen a menos de cincuenta (50) centímetros. Sin embargo, las fotografías sí demostraron que algunas de las ramas de los árboles y arbustos se extendían a los patios de los demandantes. Esta prueba, por lo tanto, tuvo el efecto de

enmendar las alegaciones de la demanda y establecer una reclamación al amparo del Art. 528 del Código Civil, *supra.*

Tomando en consideración lo antes señalado, concluimos que el demandado no incurrió en temeridad al defenderse de la reclamación en su contra. Los honorarios de abogado no proceden.

Por todo lo antes expuesto, *se modifica la sentencia dictada por el Tribunal Superior, Sala de Mayagüez, el 6 de diciembre de 1988, eliminando la parte de dicha sentencia que ordena al demandado arrancar todos los árboles que se encuentren sembrados a menos de cincuenta (50) centímetros de la colindancia de los predios de los demandantes, así como aquellos arbustos o árboles mayores de seis (6) pies de altura que se encuentren sembrados a menos de dos (2) metros de distancia de dichas colindancias, y pagar los honorarios de abogado.*

Así lo pronunció y manda el Tribunal y certifica el Secretario General. El Juez Asociado Señor Negrón García disiente con opinión escrita. El Juez Asociado Señor Rebollo López no intervino.

> (*Fdo.*) Francisco R. Agrait Lladó
> *Secretario General*

—O—

Opinión disidente del Juez Asociado Señor Negrón García.

Desde su génesis el ser humano jamás ha negado al árbol su enlace con la Vida. Así, los antiguos acuñaron esa concepción de vitalidad en la frase que hoy perdura: "el árbol de la vida." Y es que la savia del árbol, como la sangre, parece sustentar y sostener el cuerpo natural en que habitamos. Las virtudes acuden fácilmente en su elogio. Desde el signo visible de una presencia que agrada, que sosiega y vivifica, hasta

funciones que la vida moderna nos descubre para lo que sólo parecía fruto y paisaje. Los ojos se enriquecen, se pueblan de su imagen que hermosea. Todo parece acrecentarse en reposo con su sola presencia: el árbol habla de paz, de alivio, de sombra y de cobijo, mientras la tierra despoblada de flora se nos antoja zona de desamparo y desconsuelo. El entorno urbano de nuestro tiempo, que con frecuencia surge a costa de la dolorosa eliminación del árbol existente, recurre de nuevo a la plantación de otro y le asigna funciones importantes. Su valor ecológico es incuestionable. Mejora la vida humana, la limpia y purifica, y permite su disfrute en un nivel más alto de pulcro bienestar. No sólo lo ocupa en la configuración del paisaje que el hombre inventa a gusto y voluntad, sino que, al igual que en el pasado, el árbol puede cumplir con el oficio de *delimitador de propiedades*.

Se imponen, sin embargo, unas consideraciones que no invalidan este inventario de virtudes. Como ocurre en varias áreas, la actual vida urbana puertorriqueña exhibe unos perfiles de conducta que obligan a examinar otros aspectos relacionados con la presencia del árbol. Las consideraciones son innegables: la alta densidad poblacional y la continua segregación del espacio constituyen factores que limitan su presencia y la sujetan a unos cánones que es necesario observar. Los árboles, en toda su indiscutible magnificencia, pueden constituir motivo de incomodidad y discordia.

Frente a esa panorámica, es menester revisitar la normativa tradicional del Código Civil e insuflarle una interpretación acorde con los tiempos que permita lidiar con justicia controversias de este género. La nueva situación creada por el urbanismo espiral exige un reconocimiento de esa realidad. La salida feliz e ideal a disputas generadas por las innovaciones suscitadas por el mantenimiento de los árboles en la comunidad urbana es el arreglo amistoso entre vecinos. Siempre es preferible la solución amigable al recurso judicial, que a la postre resultará más costoso y molestoso, y en

lugar de aunar propicia el distanciamiento vecinal. Expongamos su trasfondo procesal y fáctico.

## I

El 20 de julio de 1988 los esposos Vélez-Vega, González-Ramírez y Flores-Rivera presentaron en el Tribunal Superior, Sala de Mayagüez, una demanda (enmendada una semana después) contra el Dr. José R. Látimer por daños y perjuicios, al amparo del Art. 277 del Código de Enjuiciamiento Civil de Puerto Rico, 32 L.P.R.A. sec. 2761.[1] Alegaron respectivamente ser dueños de tres (3) predios colindantes con una finca del doctor Látimer. Según las alegaciones quinta y sexta, en dicha finca "a todo lo largo de la colindancia este, tiene allí sembrado árboles corpulentos de gran follaje —de mangó, quenepas, teca y otros— que durante todo el año sus hojas, ganchos secos, frutas y sabandijas invaden y afectan el uso y disfrute de [sus] propiedades . . . [y] que ello ha producido el que los demandantes hayan tenido que incurrir en el triple de gastos para la limpieza de sus patios". Solicitud de revisión, *Exhibit* III, pág. 8. Adujeron que esa situación constituía un estorbo y una limitación a sus derechos propietarios, y que en múltiples ocasiones —personalmente y por escrito— le habían solicitado la eliminación de "dichos árboles y éste se ha[bía]

---

[1] Establece:

"Todo lo que fuere perjudicial a la salud, indecente u ofensivo a los sentidos, o que interrumpa el libre uso de la propiedad, de modo que impida el cómodo goce de la vida o de los bienes, constituye una perturbación que da lugar a una acción. Dicha acción podrá ser promovida por cualquier persona cuyos bienes hubieren sido perjudicados o cuyo bienestar presonal resulte menoscabado por dicha perturbación; y la sentencia podrá ordenar que cese aquélla, así como decretar el resarcimiento de los perjuicios; lo aquí provisto no podrá aplicarse a las actividades relacionadas con el culto público practicado por las diferentes religiones; Disponiéndose, que nada de lo aquí dispuesto limitará los poderes de la Junta de Calidad Ambiental para promulgar los reglamentos a que está autorizada por ley." 32 L.P.R.A. sec. 2761.

negado a ello, alegando que él no fue el que los sembró". Solicitud de revisión, *Exhibit* III, págs. 8-9. Solicitaron que fueran removidos. Además, cada uno reclamó $10,000 por alegados daños, más las costas, gastos y honorarios de abogado. Previa citación, Látimer contestó y negó expresamente todas las alegaciones, *excepto* la quinta y la sexta antes transcritas, *sobre las cuales no formuló respuesta alguna.*

La vista del caso se celebró el 15 de noviembre de 1988. No desfiló prueba testifical. La documental —*Exhibit* I (A-D) a V— por estipulación, consistió de cuatro (4) fotografías a colores, tres (3) cartas y fotocopias de los textos de los Arts. 527 y 528 del Código Civil, 31 L.P.R.A. secs. 1803 y 1804. Con dicha prueba y las alegaciones de las partes quedó el caso sometido.

El 6 de diciembre de 1989 el ilustrado foro de instancia (Hon. Hiram A. Sánchez Martínez, Juez) dictó sentencia fundada en los Arts. 527 y 528 del Código Civil, *supra,* que establecen:

*Sec. 1803. Arboles*

No se podrá plantar árboles cerca de una heredad ajena sino a la distancia autorizada por las ordenanzas o la costumbre del lugar, y en su defecto a la de dos metros de la línea divisoria de las heredades si la plantación se hace de árboles altos, y a la de 50 centímetros si la plantación es de arbustos o árboles bajos.

Todo propietario tiene derecho a pedir que se arranquen los árboles que en adelante se plantaren a menor distancia de su heredad.

*Sec. 1804. Ramas y raíces de árboles*

Si las ramas de algunos árboles se extendieren sobre una heredad, jardines o patios vecinos, tendrá el dueño de éstos derecho a reclamar que se corten en cuanto se extiendan sobre su propiedad, y si fueren las raíces de los árboles vecinos las que se extendiesen en el suelo de otro, el dueño del suelo en que se introduzcan podrá cortarlas por sí mismo dentro de su heredad.

Luego de exponer que el demandado Látimer "se allanó a que se decidiera [la] controversia de conformidad con lo que disponga la ley", se pronunció del siguiente modo:

## I

Los demandantes son dueños de varios predios de terreno que colindan con la finca del demandado. De la prueba documental surge que en la finca del demandado hay varios árboles en o cerca de la colindancia cuyas ramas se extienden a las propiedades de los demandantes. Presumimos que otro tanto ocurre con las raíces de dichos árboles.

## II

El Art. 527 del Código Civil (31 LPRA sec. 1803) dispone lo siguiente:

"No se podrá plantar árboles cerca de una heredad ajena sino a la distancia autorizada por las ordenanzas o la costumbre del lugar, y en su defecto a la de dos metros de la línea divisoria de las heredades si la plantación se hace de árboles altos, y a la de 50 centímetros si la plantación es de arbustos o árboles bajos.

Todo propietario tiene derecho a pedir que se *arranquen* los árboles que en adelante se plantaren a menor distancia de su heredad."

De igual modo, el Art. 528 (sec. 1804) expresa que:

"Si las ramas de algunos árboles se extendieren sobre una heredad, jardines o patios vecinos, tendrá el dueño de éstos derecho a reclamar que se corten en cuanto se extiendan sobre su propiedad, y si fueren las raíces de los árboles vecinos las que se extendiesen en el suelo de otro, el dueño del suelo en que se introduzcan podrá cortarlas por sí mismo dentro de su heredad."

Como puede apreciarse de la simple lectura de dichos artículos, *ambos regulan situaciones distintas. El Art. 527 re-*

*gula la distancia mínima de los predios colindantes en que no se podrán sembrar o mantener árboles. El Art. 528 aplica a aquellos árboles sembrados a la distancia autorizada de la colindancia (a más de dos metros o cincuenta centímetros, según sea el caso) pero cuyas ramas o raíces se proyectan a los fundos ajenos. En el primer caso el derecho de los dueños de los predios colindantes es a pedir que se arranquen los árboles y, en el segundo, a exigir que se corten las ramas o raíces que se extiendan a sus propiedades.*

## III

Con estos antecedentes se ordena al demandado a que en plazo no mayor de 30 días arranque todos los árboles que se encuentren sembrados a menos de cincuenta centímetros de la colindancia de los predios de los demandantes así como aquellos arbustos o árboles mayores de seis pies de altura que se encuentren sembrados a menos de dos metros de distancia de dichas colindancias. Deberá, también, cortar las ramas o raíces de cualquier árbol sembrado en su propiedad que se extendieren sobre los predios de los demandantes independientemente de la distancia a que se hallen sembrados.

Se le apercibe al demandado que el incumplimiento de esta orden podrá dar lugar a que se le encuentre incurso en desacato *civil.*

Se le condena además al pago de las costas y $500 de honorarios de abogado. (Énfasis nuestro y nota omitida.) Solicitud de revisión, *Exhibit* I, págs. 1–3.

Inconforme, Látimer acudió ante nos. Como errores, plantea que el tribunal de instancia debió desestimar la demanda presentada por perturbación o estorbo público debido a insuficiencia de prueba, y que aplicó un *derecho* no rogado, alegado, probado, que versa sobre una materia distinta a la controversia.

## II

Ambos señalamientos han encontrado eco hoy en la sentencia del Tribunal. Coincidimos con la normativa expuesta

de que las alegaciones sólo tienen el propósito de bosquejar a grandes rasgos la controversia y así notificar y apercibir a la parte contraria de las contenciones y reclamaciones en su contra. *Sierra v. Tribunal Superior*, 81 D.P.R. 554, 560 (1959); *Moa v. E.L.A.*, 100 D.P.R. 573, 586 (1972); J.A. Cuevas Segarra, *Práctica Procesal Puertorriqueña: Procedimiento Civil*, San Juan, Pubs. J.T.S., 1984, Vol. II, Cap. III, pág. 47.

Sin embargo, diferimos de la conclusión de que Látimer no fue debidamente notificado de la reclamación por el sólo razonamiento de que los demandantes no iniciaron su acción bajo el Art. 277 del Código de Enjuiciamiento Civil, *supra*, y en ningún momento hicieron alegaciones ni presentaron prueba para enmarcarla dentro del Art. 527 del Código Civil, *supra*. Ese análisis mayoritario es limitado. Está predicado en las conclusiones siguientes:

> *Las cuatro (4) fotografías.* A lo sumo, lo que éstas prueban es la existencia de árboles y arbustos en la propiedad del demandado, *cerca de la colindancia de dicha propiedad con la de los demandantes, y que algunas de las ramas de éstos penetran la propiedad de los demandantes.*
>
> *Las tres (3) cartas.* Éstas simplemente demuestran que los demandantes le hicieron varias reclamaciones al demandado relacionadas con las molestias que los árboles y arbustos en cuestión les ocasionaban.
>
> *La fotocopia de los artículos del Código Civil.* No se considera prueba. (Énfasis suplido.) Opinión mayoritaria, pág. 113.

En virtud de esas conclusiones, la sentencia sólo reconoce que "las fotografías sí demostraron que algunas de las ramas de los árboles y arbustos se extendían a los patios de los demandantes [y ello] tuvo el efecto de enmendar las alegaciones de la demanda y establecer una reclamación al amparo del Art. 528 del Código Civil, *supra*". Opinión mayoritaria, págs. 113–114. Por esa razón la mayoría opta únicamente por modificar el dictamen de instancia y, a tal efecto, elimina

la orden de "arrancar todos los árboles que se encuentren sembrados a menos de cincuenta (50) centímetros de la colindancia de los predios de los demandantes, así como aquellos arbustos o árboles mayores de seis (6) pies de altura que se encuentren sembrados a menos de dos (2) metros de distancia de dichas colindancias, y pagar los honorarios de abogado". (Énfasis suprimido.) Opinión mayoritaria, pág. 114.

## III

De entrada, para confirmar *totalmente* el dictamen del tribunal de instancia bastaría simplemente recordar dos (2) principios procesales elementales. El primero, que "[l]as aseveraciones contenidas en cualquier alegación que requiera una alegación respondiente y que no se refieran al monto de los daños, se tendrán por admitidas si no se negaren ... " (Regla 6.4 de Procedimiento Civil, 32 L.P.R.A. Ap. III), y la segunda, que son los hechos alegados en una demanda y la prueba "los que determinan la clase de acción ... y no el nombre que le den las partes". Cuevas Segarra, *op. cit.*; *Regla 70 de Procedimiento Civil*, 32 L.P.R.A. Ap. III.

En el caso de autos es evidente que Látimer, al no replicar o negar en su contestación la alegación quinta de la demanda, esto es, que en su *propiedad y "a todo lo largo de la colindancia este,* tiene allí sembrado árboles *corpulentos* de gran follaje —de mangó, quenepas, teca y otros— *que durante todo el año sus hojas, ganchos secos, frutas y sabandijas invaden y afectan el uso y disfrute de las propiedades pertenecientes a los demandantes"*, aceptó ese hecho esencial. (Énfasis suplido.) Solicitud de revisión, *Exhibit* III, pág. 8.

Esa realidad no contradicha sería suficiente para derrotar los planteamientos de Látimer acogidos por la mayoría de este Tribunal. *Con ello admitió la existencia de un estorbo que el tribunal ordenó remediar.* Las cuatro (4) fotografías lo evidencian. Aunque su reproducción en la fotoco-

piadora disponible de este Tribunal no es a colores, hemos optado por unirlas como apéndice a este disenso, pues reflejan y configuran, en estos extremos, la corrección de las apreciaciones del foro de instancia.

Más allá de toda inferencia y especulación puede visualmente *comprobarse*: (1) la proximidad, gran altura, propagación de las raíces y magnitud del follaje de algunos árboles; (2) su extensión horizontal hacia los patios de las propiedades de los demandantes; (3) *un sinnúmero de las raíces y troncos principales fueron y están sembrados en la misma colindancia y, sobre todo, (4) que debido a esa peculiar ubicación, es razonable concluir que estaban así sembrados al momento de construirse la verja de deslinde —cuya base ahora es de cemento— sobre la cual existe y se erige una de alambre eslabonado ("cyclone fence"), razón por la cual algunos árboles y troncos quedaron incrustados.*

Ahora bien, si queremos hacer cumplida y total justicia, esta realidad física abre una nueva dimensión jurídica en cuanto a la razón de decidir (*ratio decidendi*). *Nos referimos al instituto de servidumbre de medianería.* No es suficiente la modificación acordada por la mayoría del Tribunal, como tampoco confirmar, por el fundamento procesal antes aludido, la sentencia del foro de instancia. Aunque a la postre los Arts. 527 y 528 del Código Civil, *supra*, sean aplicables, resulta indispensable examinar otras disposiciones pertinentes. Acometamos esa tarea.

## IV

Las propiedades no existen aisladas, como en el mundo antiguo, sino unidas o cercanas materialmente las unas a las otras, y esta contigüidad, esta conjunción, determina una serie de interferencias, *unas queridas y otras no deseadas, pero de todas formas reales y existentes, que a su vez provocan múltiples relaciones entre los particulares, de la máxima importancia.* El conjunto de reglas que las disciplinan se ha

denominado derecho de vecindad, y acusa desde su nacimiento un relieve extraordinario, ya que se trata desde el primer momento de conciliar los intereses de uno y otro, en una síntesis de armonía. (Énfasis suplido.) F. Puig Peña, *Compendio de Derecho Civil Español*, 3ra ed., Madrid, Ed. Pirámide, 1976, Vol. II, pág. 137.

Como parte del conjunto de normas reguladoras del *derecho vecinal*, nuestro Código Civil, de herencia española, dispone una serie de normas que rigen las relaciones de predios contiguos, a cuyo amparo —bajo ciertas circunstancias— se *presume* la existencia de una servidumbre de medianería. A tal efecto, el Art. 508 del Código Civil preceptúa que se presumirá la existencia de esta servidumbre "[e]n las cercas, vallados y setos vivos que dividen los predios rústicos". 31 L.P.R.A. sec. 1752.

Comenta Castán Tobeñas que "[s]e designa con la denominación —quizá poco exacta— de servidumbre de medianería aquel conjunto de derechos y obligaciones que dimanan de la existencia y disfrute en común de una pared, cerca, vallado, etcétera, por parte de los dueños de edificios o predios contiguos, separados por dichas divisiones". (Nota omitida.) J. Castán Tobeñas, *Derecho Civil español, común y foral*, 13ra ed., Madrid, Ed. Reus, 1978, T. II, Vol. II, pág. 154. Ciertamente, y así lo confirma el propio Art. 515 del Código Civil nuestro, 31 L.P.R.A. sec. 1759, esta servidumbre implica la existencia de una comunidad en cuanto a la titularidad del elemento común divisorio de los predios contiguos.(2) Castán Tobeñas, *op. cit.*, págs. 167–168.

Sobre el particular, en *Monclova v. Blanco*, 40 D.P.R. 305, 309–311 (1929), habíamos enfatizado que:

---

(2) En lo pertinente, este Art. 515 dispone que "[c]ada propietario de una pared medianera podrá usar de ella en proporción al derecho que tenga en la *mancomunidad*". (Énfasis suplido.) 31 L.P.R.A. sec. 1759.

La pared [o elemento común] medianer[o] no ha sido ni puede ser considerad[o] nunca como propiedad dividida y determinada de cada uno de los colindantes de modo que cada uno de ellos *puede atribuirse la propiedad y dominio exclusivo de la mitad contigua a su finca.* Por el contrario, . . . [éste] ha sido considerad[o] siempre como *propiedad común,* como una comunidad de bienes de naturaleza indivisible en la que cada condueño adquiere el dominio en todas y en cada una de sus partes en la proporción de sus respectivas participaciones . . . . " . . . En rigor, la medianería es una comunidad de bienes, una copropiedad, pero de carácter *especial.* . . . Cuando la ley concede a los copropietarios de un muro común el derecho de hacer en él alguna obra en interés exclusivo de quien la hace, y no en el de los demás copropietarios, semejante concesión no puede hacerse a mero título de copropiedad, sino y al propio tiempo en virtud de un derecho de servidumbre. Para explicarse jurídicamente el aspecto por el cual la medianería tiene algo de servidumbre —gravamen en cosa ajena en beneficio de un fundo— nada mejor que analizar concretamente la relación que supone. El [elemento] medianero no es mío por entero, *es de otro y mío* —copropiedad;— pero ni el uno ni el otro podemos servirnos de él, para ciertos usos sobre todo, sino de un modo completo; todo el [elemento divisorio] en su integridad física sirve a los usos de los copropietarios —copropiedad indivisa—; ahora bien: La indivisión del [elemento divisorio] y el uso de todo él por cada propietario, determinan el beneficio de quien lo usa, beneficio que se traduce en un gravamen que carga al otro propietario . . . ." (Énfasis en el original suprimido y énfasis suplido.)

Es evidente, pues, que servidos los propietarios de predios colindantes de una hilera de árboles que separen sus respectivas fincas, el Código Civil expresamente les faculta a realizar en éstos ciertos actos característicos de la servidumbre de medianería. En este sentido, el Art. 529 del Código Civil, 31 L.P.R.A. sec. 1805, visualiza que los árboles que formen parte de un seto vivo —"cercado de matas o arbustos vivos" (*Diccionario de la Lengua Española,* 20ma ed., Madrid, Ed. Espasa-Calpe, 1984, T. II, pág. 1240)— habrán de

presumirse medianeros, y cualquiera de los propietarios está facultado a exigir su derribo. Este articulado "parece autorizar a cualquiera de los dueños para destruir árboles medianeros, lo que supone exigir la desaparición del objeto común por decisión unilateral de uno de los interesados". J. Roca Juan, *Comentarios al Código Civil y compilaciones forales*, Jaén, Ed. Rev. Der. Privado, 1978, T. VII, Vol. 2, pág. 186. No obstante, se requerirá el consentimiento de los colindantes si estos árboles *tienen el propósito de servir de mojones que marquen los linderos de las propiedades.* Roca Juan, *op. cit.*, pág. 185.

A pesar que el Art. 511 del Código Civil, 31 L.P.R.A. sec. 1755, dispone que la reparación, construcción y mantenimiento del elemento común medianero será costeado por todos los propietarios que se sirvan de la medianería, es necesario distinguir las normas aplicables en cuanto a la necesidad y consecuencias de las obras a realizarse. C. Melón Infante, *En torno a la situación de medianería en el Código Civil español*, XXXII (Núm. 3) Rev. Jur. U.P.R. 255, 305–306 (1963). Concurrimos con su opinión, al resumir los efectos de estas distinciones en las dos (2) reglas siguientes:

1a) Los gastos de reparación, construcción o mantenimiento de la medianería serán de cuenta de los dos medianeros cuando se trate de circunstancias que afecten al elemento medianero en su condición de tal y que interesen por igual a ambos partícipes, siendo, por otra parte, circunstancias ocasionadas por fuerza mayor, caso fortuito, uso de la cosa o vicio propio de la misma.

2a) Los gastos en cuestión serán, en cambio, de cuenta de uno solo de los medianeros: a) Cuando se trate de hacer frente a circunstancias que sólo tienen interés para uno de los medianeros, siendo por completo indiferentes para el otro. . . . b) Cuando se trate de hacer frente a circunstancias ocasionadas por culpa de uno solo de los medianeros. . . . c) Cuando entre los interesados hubiere un convenio al respecto. Melón Infante, *supra*, págs. 307–308.

Por otro lado, la prerrogativa concedida al propietario colindante sobre los árboles medianeros no debe confundirse con las disposiciones del Art. 528 del Código Civil, *supra*, que aplicó el foro de instancia. Dicho artículo reconoce a todo propietario —sobre cuya finca se extiendan ramas provenientes de árboles del vecino— el derecho a reclamar su poda en la medida que le invadan, y en el caso de raíces, autoriza a cortar las que penetren en su suelo. La distinción radica en que este Art. 528 es de aplicación, *exclusivamente*, cuando los árboles son *ajenos*, mientras que el Art. 529, *supra*, entra en juego cuando éstos son *medianeros*.[3]

Estas diferencias nos presentan una bifurcación en la fuente estatutaria y en el camino judicial a seguir en la controversia de autos. Por la naturaleza de los árboles situados "a todo lo largo de la colindancia este" (solicitud de revisión, *exhibit* III, pág. 8) —sean medianeros o no— la solución jurídica a esta disputa precisará la aplicación de normas distintas, aunque todas converjan como resultado final en su remoción o poda. Veamos.

## V

En circunstancias como la de autos, a pesar de que no sirvan su propósito original —sea de seto o de mojones— los árboles que fueron plantados y se encuentran en la colindancia de las partes se presumen medianeros. Esta presunción, no rebatida, aplica a aquéllos incrustados en la verja de cemento y alambre eslabonado existente.

Asimismo, las fotografías demuestran la existencia de unos árboles que originalmente servían de seto o de mo-

---

(3) Roca Juan, bajo el título *Los árboles existentes en seto vivo medianero: la facultad de exigir su derribo*, discute los Arts. 592 y 593 del Código Civil de España, equivalentes a los Arts. 528 y 529 del de Puerto Rico, respectivamente. J. Roca Juan, *Comentarios al Código Civil y compilaciones forales*, Jaén, Ed. Rev. Der. Privado, 1978, T. VII, Vol. 2, págs. 185–186.

jones, pero que al construirse la verja que hoy separa los predios, quedaron fuera —a uno y otro lado— de esa nueva construcción. La razón es sencilla. El albañil fue capaz de darle forma recta al muro de cemento —con el asentimiento o tolerancia de los vecinos— sin embargo, igual precisión no se podía lograr con una hilera de árboles sujetos a los inexorables cambios y transformaciones de una naturaleza viva en constante crecimiento. En cuanto a estos árboles, es menester recordar que el Art. 507 del Código Civil, 31 L.P.R.A. sec. 1751, preceptúa que "[l]a servidumbre de medianería se regirá por las disposiciones de esta parte y por las ordenanzas *y usos locales en cuanto no se opongan a ella, o no esté prevenido en la misma*". (Énfasis suplido.) Dado su carácter supletorio, y ausente una disposición al respecto, corresponderá a cada vecino la propiedad de los árboles según el lado de la verja en que hayan quedado. Esta conclusión está fundamentada en la renuncia de los vecinos a su derecho de medianería sobre los mismos.

En resumen, en el presente caso nos confrontamos con árboles en dos (2) situaciones distintas: los medianeros total o parcialmente incrustados en la colindancia, y los que están totalmente a cada lado de la valla, irrespectivo de que en algún momento formaron parte de un seto o fungieron como mojones delimitadores de las propiedades. Los primeros están sujetos al Art. 529 del Código Civil, *supra*, y los segundos a los Arts. 527 y 528 del Código Civil, *supra*.

Los árboles medianeros —dado el carácter de *servidumbre-comunidad* que nuestro código les brinda— pueden ser removidos unilateralmente por cualquiera de los vecinos. Puesto que la demanda de autos refleja que el remedio solicitado es de interés exclusivo de los demandantes y la prueba no revela que las circunstancias que requieren su realización —el crecimiento desmedido de los árboles— fueran provocados por el demandado Látimer, como tampoco que existe convenio mutuo de realizar y costear la reconstrucción de la

verja, corresponde a los primeros su realización y sufrago. Por no configurar la situación el elemento de culpa o negligencia necesario, resultaba improcedente la reclamación de daños en este concepto.

En cuanto a las *raíces* de los árboles que se encuentran *fuera* de la medianería y dentro de la propiedad del demandado Látimer, en la medida que penetren en el suelo de las propiedades de los demandantes recurridos pueden ser cortadas sin la intervención de Látimer. No obstante, las ramas de esos árboles que se extiendan más allá de la colindancia (sobre los predios de los demandantes) deberán ser podados por Látimer según le requirió el foro de instancia.

De ordinario, la negativa del dueño de los árboles a cortar las ramas sería remediable por vía de una inmediata acción judicial promovida por el vecino afectado —como una remoción de estorbos— con la consecuente concesión de daños. En el caso de autos, según antes indicado, Látimer aceptó la alegación quinta sobre *estorbo*; sin embargo, no desfiló *prueba de los daños*.

Finalmente, los autos y las fotografías nos permiten sostener el dictamen de instancia que ordena arrancar los árboles plantados a menor distancia de la visualizada en el Art. 527 del Código Civil, *supra*. No se presentó prueba sobre ordenanza o costumbres del lugar en la cual sostener autoridad para que fueran plantados dentro de la distancia mínima provista supletoriamente en dicho artículo.

APÉNDICE I

NOTA DE LA COMPILADORA:
La indefinición gráfica se debe a la no disponibilidad de fotocopia a colores en el Tribunal y al tamaño reducido de los modelos. Una mejor definición de fotocopias se encuentra en el expediente de este caso en el Tribunal Supremo.

APÉNDICE II

NOTA DE LA COMPILADORA:
    La indefinición gráfica se debe a la no disponibilidad de fotocopia a colores en el Tribunal y al tamaño reducido de los modelos. Una mejor definición de fotocopias se encuentra en el expediente de este caso en el Tribunal Supremo.